UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES *ex rel.* FOOTHILLS ENERGY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Case No. 2:19-cv-002016-KJD-DJA <br><br> ORDER |

Presently before the Court is Defendant Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (#40). Plaintiff filed a response in opposition (#44) to which Defendant replied (#45). Also before the Court is Defendant Sayers Construction, LLC's Motion for Summary Judgment (#41). Plaintiff filed a response in opposition (#44) to which Defendant Sayers replied (#46).

I. Procedural Background

Defendant Sayers Construction, LLC ("Sayers") was the prime contractor on the Hoover Mead Transmission Line Jumper Reinforcement Project ("Hoover Mead Project") and, in accordance with the Miller Act, furnished a payment bond ("Payment Bond") from Philadelphia Indemnity Insurance Company ("Philadelphia") to secure payment to subcontractors and suppliers. In its role as prime contractor, Sayers entered into a subcontract agreement ("Hoover Mead Subcontract") with Foothills for performance of certain work in exchange for payment by Sayers. At the time Foothills and Sayers signed the Hoover Mead Subcontract, they entered into Change Order No. 1 in the amount of $320,055.00, which accounted for the costs of materials on the Hoover Mead Project that Foothills had not included in its estimate. Foothills indicated that it could not undertake the work on the Hoover Mead Project without executing

Change Order No. 1. At the request and direction of Sayers, payment for Change Order No. 1 was to come from the Keswick-Airport and Airport-Cottonwood 230-KV Transmission Lines Reconductoring Project ("Keswick Project"), which was another project on which Sayers had engaged Foothills.

Plaintiff alleges that together, Change Order No. 1 and the Hoover Mead Subcontract represent the parties' complete agreement as to the Hoover Mead Project. Despite Foothills' performance of all obligations on the Hoover Mead Project, Sayers has refused to pay Foothills the amount promised under Change Order No. 1. Foothills initiated this action to enforce its right to receive payment under Change Order No. 1. Specifically, Foothills has asserted a claim for breach of contract and, in the alternative, unjust enrichment against Sayers. In addition, Foothills has asserted a claim on the Payment Bond against both Sayers and Foothills.

Defendant Sayers has now moved for summary judgment on each of Foothills' three claims against it, and Philadelphia has moved for summary judgment on Foothills' claim on the Payment Bond.

II. Facts

On March 22, 2017, Sayers entered into Contract No. DE-WA0003607 ("Keswick Prime Contract") under which it agreed to work as the prime contractor on the Keswick Project. On March 29, 2017, Foothills and Sayers entered into a subcontract for the performance of certain work on the project ("Keswick Subcontract").

Separately, Sayers solicited Foothills as a subcontractor on the Hoover Mead Project. The specifications required use of a helicopter and crew for the completion of the work on the Hoover Mead Project, and Foothills contacted Source Helicopters ("Source") for pricing. Source provided Foothills with an estimate based on its understanding of the scope of work, and Foothills incorporated this pricing into its proposal to Sayers. Ultimately, Sayers was awarded the Hoover Mead Project with a bid that incorporated Foothills' bid. On April 27, 2017, Sayers entered into Contract No. DE-WA0003716 with WAPA for the Hoover Mead Project ("Hoover Mead Prime Contract").

Prior to Foothills' execution of the Hoover Mead Subcontract, Foothills and Source

1   determined that they had mistakenly failed to include the entirety of their scope in the pricing
2   that Foothills had provided to Sayers. The omitted work related to installation of wire braids, as
3   the pricing contemplated single braids, not the required double braids. Instead of agreeing to a
4   subcontract that did not provide payment for the entirety of the contemplated work, Foothills
5   informed Sayers of these circumstances and that it would need to modify the pricing before it
6   would execute the Hoover Mead Subcontract, and Sayers and Foothills began negotiating a
7   change order.
8   　　　Ultimately, Sayers agreed to issue a change order increasing compensation to Foothills
9   by $320,055.00, but Sayers insisted on running the change order through the Keswick Project
10  even though it plainly involved the work on the Hoover Mead Project. Sayers directed this
11  structure of Change Order No. 1 to avoid having to account for a loss on the Hoover Mead
12  Project.
13  　　　After negotiations, the parties agreed to terms on the written change order and moved
14  forward with executing the Hoover Mead Subcontract and Change Order No 1. On May 4, 2017,
15  Foothills and Sayers entered into the Hoover Mead Subcontract, under which Foothills agreed to
16  provide materials, labor, and other services to carry out the Hoover Mead project for payment in
17  the amount of $710,945. Sayers and Foothills also agreed that the Hoover Mead Subcontract
18  would be governed by Texas law.
19  　　　At the same time Foothills and Sayers signed the Hoover Mead Subcontract, they entered
20  into Change Order No. 1, which provided "financial relief" to Foothills to account for the full
21  cost of its work on the Hoover Mead Project. Change Order No. 1 also specifically provides that
22  it "is only executable along with the contract for the [Hoover Mead] Project."
23  　　　On May 25, 2017, Sayers obtained the Payment Bond, which was executed in accordance
24  with the Hoover Mead Prime Contract. It names Sayers as the principal and Philadelphia as the
25  surety and lists the penal sum amount of $853,134. Under the terms of the Payment Bond,
26  Philadelphia consented to authorized modifications of the bonded contract and waived notice of
27  modifications. Moreover, the Payment Bond does not obligate Sayers to provide notification of
28  changes to Philadelphia for work on the Hoover Mead Project.

Foothills fully performed under both the Keswick and the Hoover Mead Subcontracts, and it finished work on the Hoover Mead Project in or around January 2019. Sayers has no claims against Foothills or complaints related to its performance. Sayers has refused to pay Foothills the additional $320,055 it promised to Foothills under Change Order No. 1 for the completion of the Hoover Mead Project.

### III. Standard for Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery responses, and affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fishbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact for trial. It can do this by: (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 323–325.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Bank of Am. v. Orr, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). It "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in its favor. Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248–249 (1986).

IV. Analysis

Determining the intent of the Hoover Mead Subcontract and Change Order #1 are essential to resolving the issues in this case. Under Texas law, a contract exists if the following elements are satisfied: (i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding. Rice v. Metropolitan Life Ins. Co., 324, S.W.3d 660, 670 (Tex. App. 2010) (citing Hubbard v. Shankle, 138 S.W.3d 747, 487 (Tex. App. 2004)). The Court finds that questions of fact prevent it from granting summary judgment.

A contract may be created prior to the execution of a formal document and the intent of the parties to make a binding agreement is the ultimate issue. See Victoria Air Conditioning, Inc. v. Lebco Constructors, Inc., 752 S.W.2d 625, 627 (Tex. App. 1988) (citing Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 555–56 (Tex.1972); Hemenway Co. v. Sequoia Pacific Realco, 590 S.W.2d 545, 548 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.)). This principle applies equally in the construction industry. Victoria, 752 S.W.2d at 627. In Texas, "[t]he general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." Jones v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981); Bd. of Ins. Comm'rs v. Great Southern Life Ins. Co., 239 S.W.2d 803, 809 (Tex. 1951). In Great Southern, for example, the Supreme Court of Texas held that an insurance policy, trust agreement, and a contract between Great Southern and the Bankers Associated must be construed together because "they were a necessary part of the same transaction." 239 S.W.2d at 809. The Texas Supreme Court instructs that construing contracts together gives "effect to the intention of the parties" and should be applied with regard to the "realities of the situation." Miles v. Martin, 321 S.W.2d 62, 65 (Tex. 1959).

Here, the question is whether Hoover Mead Subcontract and Change Order #1 are part of the same agreement. There is evidence to support that contention and evidence that they are two

separate contracts. The Hoover Mead subcontract contains a merger clause but Change Order #1 stated that it was "only executable along with the contract for WAPA Hoover mead [sic] Jumper Clamp Reinforcement Project." To further complicate matters, the Change Order states the project as "Keswick-Airport Cottonwood 230-Kv Transmission Reconnecting[.]" The parties' intent to form a binding contract and the existence of a binding contract have not been established as a matter of law but are fact issues to be determined by a fact finder. Id. at 628 (citing Simmons & Simmons Construction Co. v. Rea, 286 S.W.2d 415, 417–18 (Tex. 1956)). Accordingly, Defendants' motions for summary judgment are denied because questions of fact regarding the construction of the alleged contract require a trial on the merits.

Further, even if the Court were to find the contracts were separate, whether Change Order #1 is a valid contract requires resolution by a jury. Consideration is a fundamental element of every valid contract. Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex.1997). Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments to the contracting parties. Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex.1991). The detriments must induce the parties to make the promises, and the promises must induce the parties to incur the detriments. Id. Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties. See Michol O'Connor, O'CONNOR'S TEXAS CAUSES OF ACTION 86 (2009). The contract lacking consideration lacks mutuality of obligation and is unenforceable. Fed. Sign, 951 S.W.2d at 409. Lack of consideration is an affirmative defense. Doncaster v. Hernaiz, 161 S.W.3d 594, 603 (Tex.App.-San Antonio 2005, no pet.). The existence of a written contract, however, presumes consideration for its execution. Id. Therefore, the party alleging lack of consideration has the burden of proof to rebut this presumption. Id. Therefore, the Court denies Sayers' motion for summary judgment on lack of consideration. See Audubon Indem. Co. v. Custom Site-Prep, Inc., 358 S.W.3d 309, 321 (Tex.App.-Houston 2011) (questions of fact regarding lack of consideration prevented summary judgment and required trial); Roark, 813 S.W.2d at 496 (questions of fact regarding consideration required trial on the merits).

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (#40) is **DENIED**;

IT IS FURTHER ORDERED that Defendant Sayers Construction, LLC's Motion for Summary Judgment (#41) is **DENIED**.

Dated this 24th day of March, 2022.

_____
Kent J. Dawson
United States District Judge